UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| ALEXANDER DEAN PANKRATZ, | ) | CASE NO. C06-1328-RSL |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | AMENDED REPORT AND |
| | ) | RECOMMENDATION |
| ROBERT J. PALMQUIST, et al., | ) | |
| | ) | |
| Respondents. | ) | |
| _____ | ) | |

INTRODUCTION

Petitioner Alexander Pankratz is a federal prisoner who is currently serving an 18-month sentence for identity theft and related charges. He is represented by appointed counsel, who has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. The petition challenges a regulation issued by the federal Bureau of Prisons ("BOP") which limits the amount of time that an inmate may serve in "community confinement," or at a halfway house. Respondent has filed a response to the petition and petitioner has filed a reply. After considering the parties' submissions and the balance of the record, the Court recommends that the petition be granted and that BOP be directed to consider petitioner's request to be released to a halfway house.

# BACKGROUND

Petitioner pleaded guilty to identity theft and related charges and was sentenced by the United States District Court for the District of Alaska to 18 months in prison followed by three years of supervised release. (Dkt. #14 at 3). Petitioner did not appeal to the Ninth Circuit Court of Appeals and he is currently incarcerated at the Federal Detention Center in Seatac, Washington. The BOP projects his release date to be May 17, 2007. (Dkt. #10 at 2).

Based upon a regulation, BOP does not permit inmates to serve more than 10% of their sentence in a halfway house. *See* 28 C.F.R. § 570.21 ("the regulation"). Accordingly, the agency determined that petitioner would not be eligible for transfer to a halfway house until April 2, 2007. (Dkt. #10 at 2). On July 25, 2006, petitioner requested that BOP transfer him to a halfway house before the beginning of April 2007. (Dkt. #14, Ex. A). Petitioner gave specific reasons in support of his request, but BOP denied the request without consideration of those reasons, stating: "We are not permitted to send anyone to a halfway house for more than 10% of the inmate's sentence. There are no exceptions to this limitation." (Dkt. #14, Ex. A at 5).

On September 20, 2006, petitioner filed the instant petition for a writ of habeas corpus under 28 U.S.C. § 2241. (Dkt. #3). Respondent filed a response on October 25, 2006. (Dkt. #9). Petitioner filed a reply on November 17, 2006 (Dkt. #14), and the matter is now ready for review.

# DISCUSSION

As previously stated, petitioner challenges the regulation relied upon by BOP in denying his request for early transfer to a halfway house. This claim is properly brought in a petition under 28 U.S.C. § 2241 because the claim concerns the manner of the execution of the sentence and not the fact of petitioner's conviction or sentence. *See Tucker v. Carlson*, 925 F.2d 330, 331 (9th Cir.

1991). Before considering that challenge, however, the Court must first consider respondent's argument that the petition should be dismissed because petitioner has failed to completely exhaust his administrative remedies.

### 1. Exhaustion of Administrative Remedies

Ordinarily, a petitioner who is in federal custody and wishes to seek habeas relief pursuant to 28 U.S.C. § 2241 must first exhaust available administrative and judicial remedies. *See Brown v. Rison*, 895 F.2d 533, 535 (9th Cir. 1990). However, because the exhaustion requirement for § 2241 petitions was judicially created, it is not a statutory requirement and, therefore, it is not jurisdictional. *See Morrison-Knudsen Co., Inc. v. CHG Int'l, Inc.*, 811 F.2d 1209, 1223 (9th Cir. 1987). "Where exhaustion of administrative remedies is not jurisdictional, the district court must determine whether to excuse the faulty exhaustion and reach the merits, or require the petitioner to exhaust his administrative remedies before proceeding in court." *Brown,* 895 F.2d at 535.

Here, petitioner concedes that he has not exhausted all his administrative remedies. (Dkt. #14 at 5). Petitioner argues that his failure to exhaust should be excused, however, because the question here is one of statutory interpretation and BOP is firm in its answer. Thus, it is unlikely BOP will change its position and requiring petitioner to finish the administrative review process would likely be futile. In addition, the Court notes that, as his release date is May 17, 2007, petitioner's claim is time-sensitive and it appears that it could become moot if he were required to wait to file a habeas petition until BOP had issued its final decision. (*Id*. at 6-8).

Respondent argues, in response, that petitioner should be required to exhaust his administrative remedies because doing so would allow BOP "to consider all its options." (Dkt. #9 at 4). However, nothing in the record supports the notion that BOP would consider any

AMENDED REPORT AND RECOMMENDATION
PAGE -3

01 options other than to deny, based upon the regulation, petitioner's request for early transfer to a
02 halfway house. As BOP stated in its denial of petitioner's request, "[t]here are no exceptions to
03 this limitation." (Dkt. #14, Ex. A at 5). Therefore, it would seem futile to require petitioner to
04 pursue administrative review of his claim and the Court recommends excusing petitioner's failure
05 to exhaust all remedies. Accordingly, the Court will proceed to reach the merits of petitioner's
06 claim.

07       2. Petitioner's Challenge to BOP Regulation

08 As previously stated, petitioner argues that the regulation issued by BOP that prevents him
09 from being considering for release to a halfway house until he has served 90% of his sentence
10 violates BOP's statutory authority. The statute that authorizes BOP to place prisoners in an
11 appropriate facility, 18 U.S.C. § 3621(b) ("the statute"), provides as follows:

> (b) Place of imprisonment – The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering –
>
> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;
>
> (3) the history and characteristics of the prisoner;
>
> (4) any statement by the court that imposed the sentence--
>
> (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>
> (B) recommending a type of penal or correctional facility as appropriate; and
>
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to

AMENDED REPORT AND RECOMMENDATION
PAGE -4

section 994(a)(2) of title 28.

In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. *The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another.* The Bureau shall make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse.

18 U.S.C. § 3621(b) (emphasis added).

Until the end of 2002, BOP interpreted the above statute as authorizing prisoners to serve any part, including the entirety, of their sentence in a facility such as a halfway house. (Dkt. #9 at 6). However, in December 2002, the Department of Justice Office of Legal Counsel issued an opinion that concluded that BOP lacked such authority because, the Office of Legal Counsel reasoned, placement in a halfway house did not constitute imprisonment. (*Id.*, Ex. 4). BOP then started limiting placement in halfway houses to 10% of a prisoner's term, or six months, whichever was less.

In 2004, two circuit courts of appeals found that BOP's new interpretation of the statute and limitation on placement was contrary to the plain language of the statute, which permitted BOP to transfer a prisoner to a halfway house at any time. *See Elwood v. Jeter,* 386 F.3d 842 (8th Cir. 2004); *Goldings v. Winn,* 383 F.3d 17 (1st Cir. 2004). In response to these rulings, BOP adopted a new tact and issued a regulation that it termed "its categorical exercise of discretion for designating inmates to community confinement when serving terms of imprisonment." (Dkt. #9, Ex. 5 at 1). The regulation became effective on February 14, 2005 and states as follows:

(a) The Bureau will designate inmates to community confinement **only** as part of pre-release custody and programming, **during the last ten percent** of the prison sentence being served, not to exceed six months.

AMENDED REPORT AND RECOMMENDATION
PAGE -5

28 C.F.R. § 570.21 (emphasis added).

The question presented by the instant habeas petition is whether the statute granting BOP authority to place prisoners is susceptible to the interpretation given it by BOP, as reflected in the above regulation. In reviewing an agency's construction of a statute, courts apply the test set forth in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc*., 467 U.S. 837 (1984). A court must first examine the text of the statute to determine whether Congress has spoken directly on the issue. *See Contract Management, Inc. v. Rumsfeld*, 434 F.3d 1145, 1146-47 & n. 2 (9th Cir. 2006). If the intent of Congress is clear from the text of the statute, a court need inquire no further and must follow the expressed intent of Congress. *Id.* at 1146-47. If, however, the statute is silent or ambiguous on the specific issue, a court must determine whether the agency's interpretation is based on a permissible construction of the statute. *Id.* at 1147. If so, the Court defers to the agency's determination. *Id.*

At the outset, the Court notes that the majority of courts that have considered this issue, including the three circuit courts of appeals to have addressed it, have found that the regulation conflicts with the statute.[1] In addition, most of these courts have found that the statute's meaning is clear and that no deference to BOP's interpretation is required.

Having examined the text of the statute, this Court agrees with the courts that have invalidated the regulation. The statute unambiguously grants BOP authority to place prisoners in an appropriate facility *at any time*, including at the outset of their sentence, after considering five

---

[1] *See Woodall v. Federal Bureau of Prisons,* 432 F.3d 235, 244 nn. 9&10 (3rd Cir. 2005) (collecting district court cases); *Fults v. Sanders,* 442 F.3d 1088 (8th Cir. 2006); *Levine v. Apker,* 455 F.3d 71 (2nd Cir. 2006). The Ninth Circuit Court of Appeals has yet to address the issue.

AMENDED REPORT AND RECOMMENDATION
PAGE -6

factors. *See* 18 U.S.C. § 3621(b); *Woodall v. Federal Bureau of Prisons,* 432 F.3d at 240. Because the text of the statute is clear, no deference to BOP's interpretation of the statute is required. *See Contract Management, Inc. v. Rumsfeld*, 434 F.3d at 1146-47. The regulation is impermissibly at odds with the statutory scheme because the regulation categorically limits the amount of time that may be spent in a halfway house and it imposes that limit without regard to the statutory factors that Congress mandated BOP to consider. *See Woodall*, 432 F.3d at 245; *Levine*, 455 F.3d at 80-82. Thus, in changing the previous policy and issuing this new regulation, BOP misconstrued the underlying statute and the regulation is consequently invalid.

### 3. Respondent's Arguments

Respondent's principal argument is that BOP's authority for limiting an inmate's time in a halfway house stems from another statute, 18 U.S.C. § 3624, which provides as follows:

> (c) Pre-release custody – the Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement. The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody.

18 U.S.C. § 3624(c) ("section 3624").[2]

Respondent contends that section 3624 "limits the BOP's ability to place a prisoner in pre-

---

[2] Respondent alerted the Court that two bills were introduced in Congress recently that would have rewritten this statute. (Dkt. #9 at 8, n. 1). Interestingly, the bills would have increased the amount of time that an inmate could spend in a halfway house to 20% of the inmate's sentence. *See* H.R. 1704 and S. 1934, available at http:/thomas.loc.gov. However, as of the date of this Report and Recommendation, the bills had not become law and so have no bearing on the Court's consideration of this matter.

release status to the last ten percent (10%) of his sentence." (Dkt. #9 at 11).  The Court, however, sees no such limit in the plain language of this statute.  Rather, section 3624 appears to set forth a minimum amount of time – 10% of the inmate's sentence – that should be spent under conditions that will help an inmate prepare for re-entry into the community, *i.e.*, in a halfway house or a similar facility.  The statute does not say that *no more* than 10% of the sentence may be served in such a facility, except to say that in no case should the time spent exceed six months.  As the Third Circuit noted in *Woodall v. Federal Bureau of Prisons,* 432 F.3d 235 (3rd Cir. 2005), section 3624 "does not determine when BOP should *consider* CCC placement, but when it must *provide* it." *Id.* at 250 (emphasis in original).

      Respondent also argues that several cases provide general support for BOP's authority to issue the regulation limiting an inmate's time in a halfway house to 10% of the inmate's overall sentence.  First, respondent contends that the Ninth Circuit, in *United States v. Latimer*, 991 F.2d 1509, 1514-15 (9th Cir. 1993), held that under the federal Sentencing Guidelines, confinement in a halfway house does not constitute incarceration.  (Dkt. #9 at 9).  Similarly, respondent maintains, BOP is free to adopt the same rationale and decline to substitute time in a halfway house for incarceration, except under limited circumstances (*i.e.*, when an inmate has already served 90% of his sentence).  (*Id.*)

      Respondent's reliance on *Latimer* is misplaced.  First, as mentioned previously, this argument was advanced by BOP once before in defense of its policy limiting time spent in halfway houses, and the argument was rejected by the courts.  *See Elwood v. Jeter,* 386 F.3d 842 (8th Cir. 2004); *Goldings v. Winn,* 383 F.3d 17 (1st Cir. 2004).  In addition, *Latimer's* holding was limited to the Sentencing Guidelines and did not discuss what constitutes "incarceration" under section

AMENDED REPORT AND RECOMMENDATION
PAGE -8

3621. Thus, *Latimer* does not support respondent's argument.

In addition, respondent relies on a Supreme Court case, *Lopez v. Davis*, 531 U.S. 230 (2001), in which the Court examined a different statute than the one at issue here and upheld a regulation issued by BOP that categorically denied eligibility for early release to inmates convicted of certain violent crimes. *See* 28 C.F.R. § 550.58(a)(1)(vi)(B). The underlying statute in *Lopez*, 18 U.S.C. § 3621(e)(2)(B), "provided that BOP *may* reduce the prison term of an inmate convicted of a 'nonviolent offense' if the prisoner successfully completes a substance abuse program." *Woodall*, 432 F.3d at 246 (*citing Lopez*, 531 U.S. at 232) (emphasis in original). The statute thus reflected Congress's concern "about possibly allowing violent inmates to become eligible for pre-release." 432 F.3d at 246. The Court upheld the regulation because in issuing it, BOP had "filled the statutory gap in a way that was reasonable in light of the legislature's revealed design." 531 U.S. at 242.

The decision in *Lopez* is distinguishable from the question here. The statute at issue in *Lopez*, unlike the statute here, does not require individualized consideration of each inmate. *Woodall*, 432 F.3d at 246. *See also Padilla v. Wrigley*, 2006 WL 3268967 at *7 (E.D. Cal. November 13, 2006) ("[T]he statute at issue [in *Lopez*] did not specifically include a set of factors to be considered by the BOP in making its determination of whether an offense could be classified as 'violent.'"). Therefore, in *Lopez*, BOP simply filled in a statutory gap, whereas here, no such claim can be made because in issuing the regulation challenged by petitioner, BOP has specifically excluded from consideration the very factors, set forth in 18 U.S.C. § 3621(b), that Congress prescribed for consideration. *Padilla*, 2006 WL 3268967 at *7-8.

In sum, the arguments presented by respondent do not persuade the court to deviate from

01 the conclusion previously reached based upon a plain reading of the statute. In issuing the

02 regulation codified at 28 C.F.R. § 570.21, BOP did not act consonant with Congress's intent in

03 passing the underlying statute, 18 U.S.C. § 3621(b). Accordingly, the regulation is invalid and

04 petitioner is entitled to be considered for release to a halfway house prior to having served 90%

05 of his sentence.

06     4.  Remedy

07 Respondent suggests, in his response, that, if this Court finds the regulation to be invalid,

08 then the appropriate remedy would be reconsideration of petitioner's request to be placed in a

09 halfway house, as opposed to automatic placement. (Dkt. #9 at 13). The Court agrees.

10 Accordingly, the recommended remedy is that BOP be directed to reconsider petitioner's request

11 within 14 days from adoption of this Report and Recommendation.

12     CONCLUSION

13 For the foregoing reasons, petitioner's petition for a writ of habeas corpus should be

14 GRANTED. Respondent should be directed to reconsider petitioner's request for transfer to a

15 halfway house or similar facility, based upon the factors outlined in 18 U.S.C. § 3621(b), without

16 regard to the time limits set forth in 28 C.F.R. § 570.21. A proposed Order reflecting this

17 recommendation is attached.

18 DATED this 5th day of January, 2007.

19

20     Mary Alice Theiler
    United States Magistrate Judge

21

22